St. Joseph & Kansas Loan & Building Association v. William Thompson, *et al.*

1. Loan-and-Building Associations; *Usury; Interest Recoverable.* Where a loan-and-building association, organized under the laws of this state, loans its funds on a note and mortgage executed by persons not members of the association, such loan is not exempt from the provisions of the statute regulating interest on money, and the association cannot recover in any court more than twelve per cent. interest thereon per annum.

2. —————— *Tender; Cancellation of Note and Mortgage.* Where T. and wife obtain from a loan-and-building association incorporated under the laws of the state, the sum of $765 on a note given for $1,500 secured by a mortgage on real estate, and such parties are not members of the association, and there are no recitals in the note or mortgage of any membership, the makers thereof are entitled to a return of the note and mortgage on payment of the amount due on the note; and such association may be compelled to surrender up the note and mortgage to the makers thereof on a tender being made to it of the money actually obtained with interest thereon at the rate of twelve per cent. per annum.

3. —————— *Findings, Supported by Sufficient Evidence.* In a suit where the main question of fact at issue is, whether the makers of the note and mortgage are members of the corporation, and where it appears they have signed no writings estopping them from denying such membership, the controversy is to be settled like any other issue of fact; and where the court finds upon the evidence that such persons are not members of said association, and there is evidence to sustain the finding, although the preponderance of evidence is otherwise, this court will not disturb a judgment based upon such finding of fact.

*Error from Marshall District Court.*

Action by *Thompson* and wife to compel the *Loan-and-Building Association* to surrender and deliver up a certain note and mortgage given by plaintiffs to defendant. All the facts are set forth in the opinion, *infra.* The district court, at December Term 1875, gave judgment in favor of plaintiffs, as prayed for, and the *Loan-and-Building Association* brings the case here.

*W. W. Guthrie,* for plaintiff in error.

*J. D. Brumbaugh,* for defendants in error.

The opinion of the court was delivered by

HORTON, C. J.: On the 6th of December 1872, the defendants in error executed and delivered to plaintiff in error the following instrument of writing, to-wit:

"$1,500.                          DECEMBER 6th, 1872.

"We promise to pay the Saint Joseph and Kansas Loan-and-Building Company, or order, fifteen hundred dollars, for value received, with interest at ten per cent. per annum, said interest payable monthly on the first Monday of each month, according to the rules and regulations of the said Saint Joseph and Kansas Loan-and-Building Company. Said interest and principal is payable at the office of said company in the city of Saint Joseph, Mo. Appraisement waived.

"WILLIAM THOMPSON.
"MARY J. THOMPSON."

And at the same time also executed and delivered to the company a mortgage on their homestead, consisting of forty acres of land, situated in Marshall county, to secure the said <span>Statement of the case.</span> note. The office of the company was at St. Joseph, Mo.; and the articles of association of the company, which was an incorporation under the laws of Kansas and Missouri, state that the object of the company was to give to its members, through their savings, an easy way to discharge incumbrances and to build homes. Its manner of business was this: Whenever the funds of the company on hand should amount to the sum of five hundred dollars, or its multiple, (the full-paid value of a single share or shares,) it might be offered in open meeting to the members, and it should be awarded to that member paying the highest premium therefor who would agree to pay ten per cent. per annum interest thereon, payable monthly, until the shares of the stock were sold, and the company ceased to exist. The members receiving a loan, before drawing the money, were required to give to the company security by a deed of trust or mortgage on unincumbered real estate. The shares upon which loans were made were called redeemed shares, their ultimate value having been advanced by the company in the loan thereon. The member receiving the

loan continued to pay five dollars each month upon the shares so redeemed, until the company was ready to dissolve, in addition to the interest of ten per cent. on the note and mortgage given to secure the loan. So soon as the monthly installments, and the accumulations of interest and profits from all sources, should amount to the sum of $500 per share, the company was to be at an end, and the assets, after the debts of the company were paid, were to be equally divided among the shareholders in proportion to the unredeemed shares held by them.

The note and mortgage were executed in Marshall county, in this state, and there was sent to the defendants in error from the office of the company at Saint Joseph, by express, the sum of $765 on such note and mortgage, and the sum of one dollar to pay for the recording of the mortgage. Neither of the defendants in error received any other or further sum of money from the company on the note or mortgage. After the execution of the note and mortgage, the defendants paid to the company prior to April 1875, on account of said note, the sum of $660, and then becoming dissatisfied with the company, on being informed by an officer of the same that they had no interest in the profits of the corporation and were not entitled to a share, as the loan was their benefits, they tendered to the company $242 as the balance of the money due on the note from them to the company and demanded a return of their note and mortgage. The company refused to accept the said $242 as payment of the said note, and claimed that the balance due exceeded the sum of $600. Thereupon the defendants in error commenced their action in the district court of Marshall county to compel the loan-and-building company to accept the said $242 in full satisfaction of the note and mortgage. The company in its answer to the petition alleged, that William Thompson, one of the defendants in error, was at the time of the execution of the note and mortgage the owner and holder of three shares of the capital-stock of such company, numbered 359, 360, and 361; that he was a member of such company, and was liable

to all its rules and regulations as contained in the constitution and by-laws, and that in addition to what had been paid by the defendants in error on the note there was due the further sum of $158 for monthly dues, interest on loan, and fines for non-payment, and also the sum of $764 balance on note and mortgage, and asked for judgment for said sums with attorneys-fees and costs. On the trial judgment was rendered in favor of defendants in error, and plaintiff in error brings the action here, and asks this court to reverse the judgment of the court below and to remand the case to said court with instructions to enter judgment for plaintiff in error for a foreclosure and sale of the mortgaged premises for the various sums claimed due by the company. The special findings of fact of the district court were as follows:

1st.—On the 6th of December 1872 the plaintiffs executed the note and mortgage alleged in plaintiffs' petition.

2d.—The amount of money loaned by defendant to plaintiffs was seven hundred and sixty-five dollars.

3d.—The land described in plaintiffs' petition upon which the mortgage was given was, at the time of the execution of the note and mortgage, and is now, the homestead of plaintiffs.

4th.—The title to the land described in plaintiffs' petition was at the time of the execution of the note and mortgage in Mary Thompson, one of the plaintiffs, and wife of the other plaintiff, William Thompson.

5th.—The plaintiff William Thompson has paid the defendant since the execution of the note and mortgage described in plaintiffs' petition the aggregate sum of six hundred and sixty dollars—said sum being the amount of twenty-four several payments of $27.50 each—twelve of said payments being made in the year 1873, and at the respective dates, to-wit: January 6th, February 3d, March 3d, April 1st, May 1st, June 1st, July 1st, August 1st, September 1st, October 6th, November 3d, and December 1st; and the remaining twelve of said payments being made in the year 1874, and at the respective dates, to-wit: January 1st, February 1st, March 1st, April 7th, May 4th, June 1st, July 1st, August 11th, September 7th, October 1st, November 2d, and December 9th.

6th.—On the 15th of April 1875, and before the commencement of this suit, plaintiffs tendered to defendant two hun-

dred and forty-two dollars, as alleged in plaintiffs' petition, in full satisfaction of said note and mortgage, and have now brought the same into court.

7th.–Plaintiff William Thompson never signed the constitution or by-laws of the defendant.

8th.–Plaintiff William Thompson never was a member of the defendant company.

9th.–Plaintiff Mary J. Thompson never was a member of the defendant company, and never signed the constitution or by-laws of defendant.

10th.–Plaintiff William Thompson never bid for shares, or authorized any person to bid for shares, in the defendant company.

11th.–Plaintiff Mary J. Thompson never bid for shares, or authorized any person to bid for her for shares, in the defendant company.

12th.–The amount due the defendant on the note and mortgage for the amount of money actually loaned is the sum of two hundred and forty-two dollars.

14th.–The pretended sale of shares numbered 359, 360, and 361 of stock in the defendant company, to plaintiff William Thompson, was a device and an artifice by which it was intended to evade the usury laws of this state.

15th.–No shares were ever sold in any manner by defendant to plaintiff Mary J. Thompson.

Among others, the following conclusions of law were also filed:

"That the note and mortgage described in plaintiffs' petition are usurious; that defendant be adjudged to receive the sum of $242 in full satisfaction of the said note and mortgage; that the note and mortgage be canceled of record; and that defendant be adjudged to pay the costs of this action."

The contract in this case is treated by all the parties as a Kansas contract, and the rights and powers of the plaintiff in error as subject to the statutes of this state. Contracts for the borrowing of money from building-and-loan associations in Kansas are only exempt from the provisions of the usury or interest laws of the state when members of such associations are parties thereto. It was never intended that these corporations, organized as this one was for the purpose of giving to its members through their savings an easy way to

discharge incumbrances and to build homes, should loan their funds to others than their own members, or that if they did attempt the exercise of such authority that they could disregard the wise and wholesome provisions of the statute regulating the rate of interest collectible by law.   It was never intended that these corporations, seeking and obtaining privileges from the state as useful and beneficial associations for the comparatively poor and needy, should blossom out as loan agencies and banking institutions, without limit as to the rate of interest they could receive and collect.   Neither the letter nor the spirit of the laws relating to these corporations would authorize such a construction. ( Sec. 5, clause 27, of our corporation act, Gen. Stat. 192;  Laws of 1869, ch. 5, p. 37;  Laws of 1870, ch. 43, p. 92.)

In our view, the only questions presented to us are, whether the defendants in error were members of the loan-and-building company, or whether they were estopped by their acts from denying such membership.  It is conceded that the wife, Mary J. Thompson, was never a member of its corporation. About all she had to do with the transaction was to sign the note and mortgage.   Neither the note nor mortgage contains any recitals as to the membership of either defendant in error in the company, and upon a review of all the evidence we find no valid reason to set aside the findings of fact of the court; and as the findings are sustained by some evidence, the judgment based thereon is not erroneous.  William Thompson did not comply with the constitution by signing it, nor did he ever subscribe for any shares of stock on the books of the company ; and the secretary of the company testified that no shares of stock were ever issued to him. Neither is it claimed that any other member of the corporation transferred to said Thompson under the rules and regulations of the constitution and by-laws, by any written transfer or assignment, any share; nor did said Thompson file with the company, as required of all transferees of stock, or shares of stock, any written acceptance of any share, nor otherwise sign any writing showing that he was a member of the com-

pany. It is alleged however by the counsel for plaintiff in error, that as said Thompson made a written application to the company to redeem certain shares when he applied for the loan, and afterward received a pass-book with a copy of the constitution and by-laws containing the form of a certificate for three shares of stock, and as he was furnished by the company with certain blank forms of assignment and transfer of shares, and executed the note and mortgage, and paid various sums of money to the company, he is estopped from denying his membership in the same. We think otherwise, and our reasons are as follows: Before the execution of the note and mortgage, the application, which was defective in form, was returned to Thompson to be corrected and properly certified, and then to be sent back to the office of the company. This Thompson retained, and never gave back. Whether the so-called blank transfers and assignments were ever signed or not, is immaterial, because they were never delivered to the company, and were the same as if never executed. The pass-book was not obtained until after the loan, and the so-called certificate of stock therein, had the numbers of the shares of stock (now claimed to have been bought by the company for Thompson,) carefully and thoroughly erased and crossed out. Then again, after a loan was made, the party thus redeeming a share or shares had no longer any control of the same, as they reverted to the company. So all of these matters, instead of proving Thompson a member of the company by ownership of any shares, only proved the opposite. We refer now to the only evidence submitted upon which, in our opinion, any serious question can be made as to the findings of the court below on the membership of Thompson in the company. McLean, the secretary, testified on the part of the company, that the note and mortgage were given for the proceeds of shares, 359, 360 and 361; that these three shares were put up at auction and sold to William Thompson at a meeting of the company in St. Joseph, Mo. on the 2d of December 1872; that these shares were owned by the firm of Nicely & Co., a firm com-

Building Association v. Thompson.

posed of the president and secretary and three directors of the company; that the company bought the shares for Thompson from Nicely & Co. for $223.50; that at the sale for the loans to Thompson there was paid $165 premium on each share, and the note of $1,500 was made up of $495 paid as premiums for the loan, $223.50 paid Nicely & Co. for the shares, $15 paid for the December dues for 1872, and $766.50 sent to Thompson. Witness also stated that the company transferred the three shares of stock No. 359, 360 and 361 on the transfer-book from Nicely & Co. to William Thompson on 6th December 1872, and presented the transfer-book to show the transfer, and also the minute-book to show the bid for the loan on December 2d. From the minute-book the only business transacted on said December 2d, was as follows:

"The company met at the office of the company in St. Joseph, Mo., and the following shares of stock were sold:

One share to William Thompson, Blue Rapids,............$165.00
  "     "     " William Thompson,   "      " ............$165.00
  "     "     " William Thompson,   "      " ............$165.00

"On motion adjourned, to meet January 6th, 1873.

"F. L. McLEAN, Sec'y."

It is admitted that William Thompson was never at St. Joseph to see anything about the loan, or any shares in the company; and said secretary stated he did not recollect who bid off the shares for Thompson, but that a letter was received from a Mr. Chandler, who was a stockholder in the company, and a neighbor of Mr. Thompson, and with whom Thompson consulted about getting some money from the company, asking that three shares of stock be purchased for Mr. Thompson, and that the shares be bid off for him at the next meeting. It was not shown that Nicely & Co. ever transferred any shares to Thompson, or had any knowledge of the transfer made on the transfer-book, except the fact that said firm of Nicely & Co. were really the loan-and-building company, or rather the officers of such company. It does not appear that either of the defendants in error ever heard of the firm of Nicely & Co. prior to the taking of evidence in the

case for trial, or had any knowledge at the institution of their suit of the said transfer of stock on the books of the company. Upon all the evidence the court below found that William Thompson never bid for shares or authorized any persons to bid for shares in the said company and that the pretended sale of said shares 359, 360 and 361 was a device and an artifice by which it was intended to evade the usury laws of this state. Even admitting that the preponderance of the evidence is against the conclusion reached by the court, we cannot disturb this finding in the face of the direct evidence of said Thompson that he never purchased any shares in the corporation, never bid off any shares at any meeting, and never authorized any person to bid off any shares for him. The Thompsons seem to have acted in good faith in all the transactions, and the equities of the case are certainly with them. They were ignorant of the operations of the association at the time they obtained the money. The loan was made in violation of the regulations of the constitution and by-laws of the corporation; and so soon as the defendants in error understood the claim of plaintiff in error against them a tender was made to the company of a sufficient sum to repay the loan with interest thereon at the rate of twelve per cent. per annum from the date they received it. We do not see that the corporation has suffered any loss at the hands of the makers of the note and mortgage, as the money loaned has been paid or tendered with the highest rate of interest obtainable under the laws of this state, and the shares of stock claimed to have been purchased from Nicely & Co. have never been delivered to the defendants in error. Neither was it shown that such shares have depreciated in value. Under the circumstances, no court of equity would be justified in giving a construction to the contract of the parties by which in addition to the sums already paid and tendered the excessive fines and demands still claimed as due by the plaintiff in error shall be placed in judgment and made a lien upon the homestead of the defendants, unless the pro-

22—19 KAS.

visions of the writings executed by them, or their conduct in the premises, imperatively demanded such an interpretation.

Upon the trial the court admitted some irrelevant evidence as to immaterial matters, which on the objections thereto should have been rejected. But this frequently occurs in the trial of cases to the court without the intervention of a jury; and as the findings of fact in the cause are supported by valid testimony, and as in our examination of the testimony supporting the findings we have omitted all considerations of the improper evidence received, the error complained of as to the admission of certain objectionable testimony is an immaterial one, and no ground for a reversal of the judgment. The note, upon its face, is payable at once, unless otherwise provided by the rules and regulations of the corporation. As neither of the defendants in error, under the findings of the court, was bound by these conditions, not being a members thereof, the plaintiff in error should have surrendered up the note and mortgage when the balance due thereon was tendered to its officers.

The judgment of the district court will be affirmed.

All the Justices concurring.